UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-----------------------------------------------------------------x
BARBARA CIPRIANI,

                          Plaintiff,
                                                    **COMPLAINT &**
          -against-                                 **JURY TRIAL DEMAND**

SWISS INTERNATIONAL AIRLINES, AG,
and SWISS INTERNATIONAL AIRLINES, LTD.,


                          Defendants.
-----------------------------------------------------------------x

Plaintiff, BARBARA CIPRIANI, by her attorneys, KREINDLER & KREINDLER LLP,

as and for her Complaint against Defendant, SWISS INTERNATIONAL AIRLINES, AG and

SWISS INTERNATIONAL AIRLINES, LTD., alleges the following:

## THE PARTIES

1.      The plaintiff, Barbara Cipriani, is a Massachusetts resident residing at 225

Walden Street, Cambridge, Massachusetts.

2.      The defendant, Swiss Air International Airlines, AG (Swiss Air AG), is a Swiss

corporation with a principal place of business in Switzerland.  Swiss Air AG is a wholly owned

subsidiary of Deutsche Luftansa, AG, a German corporation.  Swiss Air AG is part of the Luftansa

Group and a member of the Star Alliance, which includes a codeshare agreement with United

States airlines.

3.      Defendant Swiss Air International Airlines, Ltd. (Swiss Air Ltd.), is a foreign

corporation registered to do business in Massachusetts and with it principal offices for the

transaction of business in the United States at 1640 Hempstead Turnpike, East Meadow, NY

11554.

4.      Defendants Swiss Air Ltd. and Swiss Air AG are and were common carriers engaged in the business of transporting passengers for hire by air on international flights.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over the plaintiff's claims under 28 U.S.C. § 1331 because they are governed by the 1999 Convention for the Unification of Certain Rules for International Carriage by Air. (hereinafter referred to as "the Montreal Convention"). The Montreal Convention is a treaty ratified by the United States Congress that went into effect in November 2003.  The plaintiff's injuries were sustained on August 10, 2019 as a result of an accident while a fare-paying passenger on Swiss Air flight 1662 from Zurich Switzerland to Venice, Italy.  Flight 1662 was an international flight conducted by the Swiss Air defendants and part of an international itinerary with Boston, Massachusetts, as the beginning of the trip and the final destination.

6.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(2) because the plaintiff is a citizen of Massachusetts and Swiss Air AG is a foreign corporation with its principal place of business in Switzerland and Swiss Air Ltd. is a foreign corporation with its principal place of business in New York.

7.      This Court has subject matter and personal jurisdiction over Swiss Air AG and Swiss Air Ltd. (hereinafter referred to collectively as "Swiss Air") under Article 33(2) of the Montreal Convention because, at all times relevant to the claims asserted herein, the plaintiff's principal and permanent residence was and remains in the Commonwealth of Massachusetts, Swiss Air operates international flights to and from Logan International Airport (Logan) in Boston, Massachusetts, Swiss Air conduct flights in Massachusetts through premises leased by it or leased

or owned by other airlines with which it has a commercial agreement, and the final destination of the plaintiff's international itinerary was Boston, Massachusetts.

8.      This Court also has personal jurisdiction over Swiss Air under the Massachusetts Long-Arm Statute, G.L. c. 223A, § 3, and the Due Process Clause of the United States Constitution because:

a.   At all times relevant to the claims asserted herein, Swiss Air transacted business in Massachusetts by conducting commercial airline operations and related activities, including routine and daily scheduled international flights to and from Boston, Massachusetts and Zurich, Switzerland.  Swiss Air also conducts international flights to and from Switzerland and Chicago, Illinois, San Francisco, California, Newark, New Jersey, New York, New York, Los Angeles, California, and Miami, Florida;

b.   Swiss Air derives substantial revenue from its flight operations in Massachusetts;

c.   Swiss Air employs people in Massachusetts to conduct its flight operations in that State;

d.   Swiss Air provided the aircraft, the flight and cabin crew, and related flight services in Boston, Massachusetts for the first leg of the plaintiff's international itinerary from Boston to Zurich, Switzerland and for her return flight from Zurich to Boston;

e.   The plaintiff purchased her ticket for the Swiss Air flights while in Massachusetts. When she purchased her tickets for each of her flights, including the subject flight, presented her ticket and boarding pass to Swiss Air, and was permitted to board the aircraft for each flight, a contract of international carriage existed between the plaintiff and Swiss Air;

f.   Swiss Air has commercial agreements and alliances with United States airlines with offices in Massachusetts; and

g.  Swiss Air Ltd. is a foreign corporation registered with the Massachusetts Secretary of
State to do business in Massachusetts.

9.      The plaintiff's cause of action for her injuries during Swiss Air flight 1662 from
Zurich to Venice arose out of Swiss Air's transacting of business in Massachusetts, contracting to
provide services in Massachusetts, and its contractual relationship with the plaintiff.

## FACTUAL ALLEGATIONS

10.     At all times herein relevant, Swiss Air was and is a commercial common carrier
engaged in the business of international air transportation of passengers.

11.     At all times herein relevant, Swiss Air employs cabin and flight crews responsible
for the safe and secure operation of its flights and the safety and well-being of its passengers.

12.     At all times herein relevant, Swiss Air was responsible for the training,
management, supervision, and/or control of its flight and cabin crews including, but not limited to,
the crew's adherence to standard safety policies and protocols.

13.     On or about May 5, 2019, the plaintiff purchased airline tickets for international
flights on Swiss Air from Boston to Zurich, from Zurich to Venice, Italy, from Venice to Zurich,
and a return flight from Zurich to Boston.  The plaintiff was a fare-paying passenger on the
following flights: Swiss Air flight 53 departing from Boston to Zurich on August 9, 2019 and
arriving on August 10; Swiss Air flight 1662 departing Zurich on August 10, 2019 and arriving in
Venice the same day (the subject flight); Swiss Air flight departing Venice on August 24, 2019
and arriving in Zurich the same day; and Swiss Air flight departing Zurich on August 24, 2019,
and arriving in Boston the same day.

14.     The subject flight involved "international carriage or transportation" as defined
under Article I of the Montreal Convention.

15.     For the subject flight from Zurich to Venice, Swiss Air utilized an Airbus A320 aircraft.

16.     The plaintiff's mother, Angela Pisciotti, and the plaintiff's son, Gabriel Cipriani-Katebeh, accompanied the plaintiff on all of her Swiss Air flights as fare-paying passengers. Gabriel was 9 years old at the time and suffered from autism with mood dysregulation, impulsiveness, hyperactivity, and impaired walking.

17.     Upon boarding the subject aircraft in Zurich, the cabin and/or flight crew knew that Gabriel was a child with special needs and that he had acted erratically while being transported by wheelchair to the gate where the subject flight was boarding.

18.     During the flight and before beverages were served, the crew observed that Gabriel was moving restlessly and making noise.

19.     The plaintiff, Gabriel, and Ms. Pisciotti were seated in row 3 of the aircraft: the plaintiff was in seat D (the aisle seat), Gabriel was in seat E (the middle seat), and Ms. Pisciotti was seated in seat F (the window seat).

20.     Gabriel had his seatbelt attached at all times.

21.     At all relevant times, Gabriel was further restrained by a leather therapy belt held by his grandmother, Ms. Pisciotti.  The purpose of the belt is to control and restrict Gabriel's ability to move.

22.     During the subject flight from Zurich to Venice, the flight attendants provided the passengers with beverage services using a beverage cart, also referred to as a trolley.

23.     The flight attendants were pushing the cart from the front of the aircraft toward the rear.

24.     As the cart approached row 3, Ms. Pisciotti asked the flight attendants to move forward quickly, concerned that Gabriel might impulsively react to the cart.  The flight attendant did not comply with this request.

25.     The plaintiff was asleep at the time.

26.     While the cart was stopped at row 3, one flight attendant was standing at the rear of the cart.  Another flight attendant was serving beverages forward of the cart.

27.     A tall black carafe of hot coffee was sitting at the right rear corner of the cart directly in front of the flight attendant.  The carafe was placed in a clear plastic tray.  Other bottled beverages and red and clear plastics cups were also sitting on the top of the cart.

28.     When the cart was stopped at row 3, Gabriel made a movement toward the cart, but his hand did not reach or touch the cart.  When this occurred, the flight attendant reacted and abruptly, carelessly, and negligently bumped and pushed the cart forward to a point where the carafe was adjacent to the plaintiff's back.  This abrupt movement of the cart caused the carafe of scalding hot coffee to fall from the cart and spill on her shoulder and flow down her back and buttocks.  The spilt coffee also fell upon the lap of the passenger seated directly behind the plaintiff in row 4.

29.     As a result, the plaintiff suffered severe second degree burns on her shoulder, back, and buttocks.

30.     The black carafe of coffee and the clear plastic tray are depicted below:

 



31.    When the aircraft arrived in Venice, an ambulance was awaiting the plaintiff's arrival and transported her to the hospital where she was treated for second degree burns on her shoulders, back, and buttocks.

32.    The burns sustained by the plaintiff have had life-altering effects, have caused her to endure pain and suffering and great discomfort since the moment of injury, disfigurement,

discoloration of her skin, and embarrassment. The plaintiff has been, and continues to be, deprived of her enjoyment of life, pursuits, and interests as a result of her injuries.

33.     The plaintiff was injured by an "accident" during the flight within the meaning of Article 17 of the Montreal Convention.

34.     The plaintiff's injuries were caused by an unexpected and unusual event that occurred external to her and not by the plaintiff's internal reaction to the normal operation of the aircraft.

35.     The actions and inactions of the cabin and flight crew and Swiss Air played a causal role in the accident and the plaintiff's accident and injuries arose out of the contractual relationship between her and Swiss Air.  Specifically,

>    a.  The flight crew was aware that Gabriel suffered from autism manifested by erratic behavior before the aircraft departed Zurich.  Despite this knowledge, the flight crew permitted Gabriel to board the aircraft.
>
>    b.  The flight attendants operating the beverage cart were told by Ms. Pisciotti that they should quickly move the cart forward and away from Gabriel.  Despite their knowledge that Gabriel was prone to erratic behavior, they refused to heed this warning.
>
>    c.  The coffee carafe was not equipped with a fastener, clasp, or other device to prevent it from spilling if jostled, tipped, moved, or dropped during flight.
>
>    d.  The height of the tray where the coffee carafe was stored was substantially shorter than the carafe, allowing it to tip over or fall off the cart if the cart moved suddenly or was mishandled by the fight crew.

e.   The tray on which the coffee carafe was placed was not properly secured to the cart, permitting the tray to slide off the cart if suddenly jostled.

f.   The flight attendant abruptly pushed the cart forward toward the rear of the aircraft without the assistance of another flight attendant.

36.   Based on the foregoing, Article 17 of the Montreal Convention renders Swiss Air strictly and absolutely liable—even in the absence of its employee's negligence—to compensate the plaintiff for her injuries up to the full amount of the Special Drawing Rights (SDRs) under the Montreal Convention.

37.   Swiss Air cannot limit its liability under Article 21 of the Montreal Convention because it cannot show that it and its cabin crew and other employees were not negligent in causing the plaintiff's injuries.  Nor can Swiss air prove that the plaintiff's injuries were caused solely by the acts of third parties.

38.   As a direct and proximate result of the foregoing, the plaintiff is entitled to recover, under the applicable law, the full amount of her damages as compensation for her injuries beyond the amount of the SDRs including, but not limited to, the following: medical expenses; loss of impairment of earning capacity; economic losses; physical and mental pain and suffering; loss of enjoyment of life, disfigurement, and all other damages recoverable under the law applicable to this action.

WHEREFORE, the plaintiff, BARBARA CIPRIANI, demands judgment against the defendants, SWISS INTERNATIONAL AIRLINES, AG and SWISS INTERNATIONAL AIRLINES, LTD., in an amount to be determined at trial, together with interest, costs and disbursements of this action.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  July 30, 2020

By her attorneys,
KREINDLER & KREINDLER LLP

/s/ Anthony Tarricone
Anthony Tarricone (BBO #492480)
Joseph P. Musacchio (BBO #356270)
855 Boylston Street
Boston, Massachusetts  02116
Tel. (617) 424-9100


and,

KATZMAN, LAMPERT & STOLL

s/s Bradley Stoll
121 North Wayne Ave.
Suite 205
Wayne, PA 19087
Tel. (610) 686-9686

(*pending pro hac vice admission*)